MARGARET A. RONAN vs. JAMES P. RONAN & another.

Plymouth.   December 5, 1958. — June 29, 1959.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, &
WHITTEMORE, JJ.

*Tenants by the Entirety.   Personal Property,* Tenancy by the entirety.
*Husband and Wife,* Contract obligation.   *Equity Jurisdiction,* Husband
and wife.   *Contribution.   Restitution.   Subrogation.   Exoneration.*

Upon a taking by eminent domain of real estate held by husband and wife
as tenants by the entirety, the damages for the taking paid to them be-
longed to them as tenants by the entirety also, so that during their
joint lives the husband would be entitled to the income of such money
and upon the death of either the survivor would be entitled to all the
money.   [463]

Where it appeared that a husband, when he and his wife were contemplat-
ing purchasing real estate, told her to "pay for it" and promised to
"reimburse" her "every week," that they took title in their names as
tenants by the entirety and paid the balance of the purchase price,
after a down payment, from the proceeds of a "G. I." mortgage loan
obtained by the husband as a veteran, in connection with which both
signed the note and the mortgage, and that the wife from her own funds
made the down payment and thereafter paid the carrying charges,
taxes, and expense of repairs and improvements, she was not entitled
to maintain a suit in equity against him to obtain the promised reim-
bursement by way of contribution, restitution, exoneration, or subro-
gation.   [463–464]

In a suit in equity between husband and wife involving a sum of money
belonging to them as tenants by the entirety, the decree in the circum-
stances should provide that the money be placed in a savings institu-
tion account in their names as such, the interest to be payable to the
husband during their joint lives and all the money to be payable to the
survivor upon the death of either of them.   [464]

BILL IN EQUITY, filed in the Superior Court on May 28,
1956.

The suit was heard on a master's reports by *Hudson,* J.

*Vincent R. Brogna,* for the plaintiff.

No argument nor brief for the defendants.

COUNIHAN, J.   This is a bill in equity brought by Margaret
A. Ronan against her husband James P. Ronan and Arthur
T. Murphy, who was appointed conservator for James by

the Probate Court for Plymouth County. The plaintiff in her bill seeks to establish that she is the owner in whole or in part of the balance of money received by her and her husband, James, by reason of a taking by the Commonwealth of Massachusetts by eminent domain of certain land and the buildings thereon numbered 25 Bryant Avenue, Quincy, title of record to which was in the name of Margaret and James as tenants by the entirety. The suit comes here upon the plaintiff's appeal from a final decree, declaring that this balance be established as a trust fund to be administered by the conservator of James and ordering him to pay annually the income of this fund to James and, upon the death of either husband or wife, to pay the remainder of the fund to the survivor. There was no error.

This suit was referred to a master who filed a report. Upon recommittal he filed a supplemental report. It appears from a copy of the docket that these reports were confirmed.

From these reports we gather that the Ronans were married on November 3, 1946. At that time James was employed as a maintenance man at wages of approximately $65 a week. He continued this employment until about January 1, 1952, and he has not been employed since then. Thereafter James has been confined to hospitals from time to time and on September 12, 1955, Arthur T. Murphy was appointed conservator of James and he was acting as such at the time the suit was instituted and thereafter. Margaret at the time of the marriage was employed as a receptionist by an insurance company at a salary of $3,200 a year and in addition she earned commissions on insurance premiums of between $1,200 and $1,500 a year from 1946 to 1954.

From the time of their marriage until he ceased to work James turned over his pay to Margaret each week. She gave him small sums of money for transportation to and from work and for spending money. The earnings of both were handled by Margaret and used for their common purposes.

On April 7, 1948, they purchased a house to live in at 25 Bryant Avenue, Quincy, taking title in their names as

tenants by the entirety. Margaret made a down payment of $500 from her own funds on the purchase price and the balance was paid from the proceeds of a note and mortgage to a coöperative bank in the sum of $10,500 which they both signed. James was a veteran and the mortgage was of the type known as a "G. I. loan." James at that time had no assets. Margaret made all payments to the bank for dues, principal, interest and taxes, and in addition paid $526.80 for repairs and minor improvements to the property. Including the down payment on the purchase price these payments amounted to approximately $7,286.68 during the period from the time of the purchase to the time of the taking. The master found that Margaret made these payments from her own funds.

When they were considering the purchase of the property James told Margaret that he could not afford to carry the house on his salary and left it to her "as to whether or not they could swing the house." He further told her, "If you think we can take it, you pay for it out of your pay check and I'll reimburse you every week out of my pay check."

On July 27, 1954, this property, as we have said, was taken by the Commonwealth by eminent domain and later damages were awarded in the sum of $13,629.48. After deducting payments to the bank, taxes and water charges there remained a balance of $4,241.50 which was paid over to them by a check payable to Margaret and the conservator of James. This amount was the sum dealt with in the final decree.

In order to determine what interest the plaintiff has in the balance of the award remaining after the bank was paid the amount due it and other charges were paid, we must first decide the nature of the ownership of the parties in the realty taken. The title to the realty was of record in their names as tenants by the entirety. While it is true that the plaintiff made a down payment of $500, James was primarily responsible for getting the "G. I. loan" from the bank because he was a veteran. They both therefore had a beneficial interest in the property.

The balance of the condemnation proceeds, representing as it does the equity of redemption, stands on the same footing as did the realty. This balance of $4,241.50, therefore, belongs to both of them as tenants by the entirety. *Childs* v. *Childs,* 293 Mass. 67. *Campagna* v. *Campagna,* 337 Mass. 599, 605–606. The husband, therefore, has the right to the income of this money during their joint lives and upon the death of either the survivor is entitled to all of it. *Childs* v. *Childs, supra. Campagna* v. *Campagna, supra.* See *Splaine* v. *Morrissey,* 282 Mass. 217.

The plaintiff argues that the taking by the Commonwealth destroyed the tenancy by the entirety and created a joint tenancy. We do not agree. We have said in *Campagna* v. *Campagna, supra,* "[s]uch a title continues during the existence of the marital relationship and cannot be changed except by death, divorce, a deed of both parties or a deed of one spouse to the other." *Bernatavicius* v. *Bernatavicius,* 259 Mass. 486. *Hale* v. *Hale,* 332 Mass. 329, 332. In the case of personal property the word "transfer" should be substituted for the word "deed." In the instant case there was no severance of the tenancy by the entirety at any time by the parties themselves.

The plaintiff further asserts that a promise by her husband, unenforceable at law, to reimburse her for money expended by her in connection with the ownership of this realty may be enforced in equity upon the theory of contribution or restitution, and in addition that as a comaker of the mortgage note she is entitled to subrogation. We do not agree.

Suits between husband and wife are not authorized in this Commonwealth, G. L. c. 209, § 6, except that suits in equity may be entertained "where there exists some recognized ground of general equity jurisdiction or some controversy over property rights, as distinguished from a mere debt or contractual obligation." *Charney* v. *Charney,* 316 Mass. 580, 582–583, and cases cited. See *Prahl* v. *Prahl,* 335 Mass. 483. In the case at bar the allegations of the plaintiff were grounded upon a promise and agreement of James to reimburse his wife Margaret for money to be expended by her in

connection with the realty they were to purchase. This promise in return for Margaret's promise to make the down payment and take care of the mortgage obligations and taxes was in its nature a contractual obligation or at least it constituted only a debt due from James to Margaret when James failed to fulfil his promise. Margaret had no right of an equitable nature and no property rights were involved. Therefore a suit upon the obligation or to recover the debt does not lie. See *Weidman* v. *Weidman*, 274 Mass. 118.

The same principles of law apply to a suit by a wife against her husband, a comaker on the mortgage note, to recover by way of subrogation, exoneration or contribution.

We are of opinion that the final decree must be modified. It should provide that the balance of $4,241.50 together with all accumulations of interest be deposited in a savings institution in the county of Norfolk in the names of the husband and wife as tenants by the entirety, the interest during their joint lives to be payable to the husband, and that upon the death of either the survivor is to be entitled to all of it.

As so modified the decree is affirmed.

*So ordered.*